IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED

July 31, 2026

LAURA A. AUSTIN, CLERK
BY: /s/L. Ayers
DEPUTY CLERK

GARRETT S. SAYRE,                    )
    Plaintiff,                       )
                                     )    Civil Action No. 7:26-cv-00235
v.                                   )
                                     )    By: Elizabeth K. Dillon
CAPITAL ONE, NATIONAL                )        Chief United States District Judge
    ASSOCIATION,                     )
    Defendant.                       )

## MEMORANDUM OPINION

Capital One, National Association, moves to dismiss Garrett S. Sayre's claim against it. (Dkt. No. 10.) Sayre alleges Capital One—as successor by merger to Discover Bank—did not comply with its statutory duties under the Fair Credit Billing Act, 15 U.S.C. § 1666, and Regulation Z, 12 C.F.R. § 1026.13. Sayre fails to plausibly allege either a billing error or noncompliance with procedure. Accordingly, Capital One's motion will be granted, and Sayre's claim against it dismissed.

## I. BACKGROUND

Sayre spent about $20,000 on a dating site called UkrainianCharm.com, but he claims the services he received were "not delivered as advertised." (Compl. ¶ 2.) During his use of the site, Sayre discovered that "the overwhelming majority" of female profiles on the site were "AI-generated" and that UkrainianCharm.com misled paying users about the authenticity of other profiles by advertising its verification and "identification process." (*Id.* ¶¶ 25, 28, 36.)

A key feature of the site is that a user may not exchange contact information with other profiles; he must purchase "credits" to "unlock" their information. (*Id.* ¶¶ 48–49.) To illustrate the "fraudulent nature" of this system, Sayre submits messages from a customer service representative who stated that Sayre had reached the necessary "credit-threshold" to unlock a

user's phone number and email address. (Dkt. No. 1-1 at 3–4.) Sayre had to complete a verification check sent by the representative, but he later discovered that the "unlocked" user was an AI bot. (*Id.*) He also includes correspondence with a different customer service representative who told him, for example, "As for the girls, they are all real as they do additional verification." (*Id.*)

Sayre further alleges that UkrainianCharm.com misrepresented its fraud prevention procedures, pointing to the site's purported "anti-scam system" and "Trust & Safety specialists." (Compl. ¶¶ 57–58.) He specifically references the site's Terms of Service, which "fail to disclose material facts, including that communications are generated by artificial intelligence or third-party agents, that romantic expressions may be fictional or scripted," or that profiles may not be real. (*Id.* ¶ 70.)

When an obligor reports an alleged billing error, a creditor is required to launch an investigation to determine whether the obligor's disputed charges should be reversed. 15 U.S.C. § 1666(a). Sayre disputed the charges he incurred on UkrainianCharm.com with his creditor at the time, Discover Bank. But Discover declined to reverse the charges, and Sayre claims its investigation was neither "reasonable" nor conducted in "good faith." (Compl. ¶ 2.)

Sayre submitted extensive documentation to Discover in support of his dispute. This included "a documented timeline of transactions and losses, transcripts of deceptive communications, correspondence with merchant support demonstrating deflection and misrepresentation, forensic analysis of profile imagery consistent with AI fabrication, and sworn declarations corroborating these findings." (*Id.* ¶ 95.) He characterizes this information as "overwhelming" evidence that the disputed charges were based on services from UkrainianCharm.com that were "materially misrepresented and never delivered as promised."

(*Id.* ¶ 98).  Considering this evidence, Sayre alleges that Discover did not "meaningfully evaluate" his dispute and simply relied on the site's "merchant rebuttals" in making its final determination.  (*Id.* ¶¶ 98–99.)

Sayre's complaint does not include the dates of his disputed charges, the date of his billing-error notice to Discover, or UkrainianCharm.com's response letter to Discover's inquiry. But his complaint rebuts the site's response to Discover's inquiry in broad strokes, saying "it relied exclusively on transactional records," when the dispute was really "whether the services promised were delivered as represented."  (*Id.* ¶ 105.)

Sayre brought suit, and Capital One moved to dismiss.  (Dkt. No. 10.)  Sayre responded in opposition and, in the alternative, moved for leave to amend.  (Dkt. No. 17.)  Capital One duly replied.  (Dkt. No. 18.)  Sayre then moved for leave to file a sur-reply (Dkt. No. 19), which Capital One opposed (Dkt. No. 20).  Because the court will not foreclose the possibility that Sayre might successfully amend his complaint, his motion in the alternative (Dkt. No. 17) will be granted.  And, because Sayre's proposed sur-reply ought to be considered in light of the lengthy exhibit attached to Capital One's reply, his motion for leave to file it (Dkt. No. 19) will be granted.  The court has considered it in reaching this ruling.

## II.  LEGAL STANDARDS

### A.  Failure to State a Claim

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Facial plausibility is satisfied if a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  Where a

complaint fails to provide a cognizable legal theory or sufficient factual allegations to support a claim, dismissal is warranted.  *Phillips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).  While courts must "liberally" construe a pro se complaint, this "generous construction" is not "without limits."  *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**B.  Fair Credit Billing Act and Regulation Z**

The Fair Credit Billing Act ("FCBA"), 15 U.S.C. § 1666, and its implementing regulation, Regulation Z, 12 C.F.R. § 1026.13, provide consumers with a formal process to dispute errors on open-end credit accounts.

The FCBA and Regulation Z contain an exclusive, and nearly identical, list of what may constitute a "billing error."  The parties agree that only one of the listed sorts of error is relevant here.  The FCBA defines it, "A reflection on a statement of goods or services not accepted by the obligor or his designee or not delivered to the obligor or his designee in accordance with the agreement made at the time of the transaction."  15 U.S.C. § 1666(b)(3).  Regulation Z puts it, "A reflection on or with a periodic statement of an extension of credit for property or services not accepted by the consumer or the consumer's designee, or not delivered to the consumer or the consumer's designee as agreed."  12 C.F.R. § 1026.13(a)(3).  The Consumer Financial Protection Bureau—Regulation Z's primary enforcement agency—has an official interpretation that "Section 1026.13(a)(3) does not apply to a dispute relating to the quality of property of services that the consumer accepts."  12 C.F.R. pt. 1026, supp. I, cmt. 13(a)(3)-ii (2026).

An obligor's billing-error notice must arrive to his creditor within sixty days of the disputed credit statement having been originally transmitted to him.  This notice must contain sufficient information for the creditor to identify the obligor, state the obligor's belief that the

statement contains a billing error, indicate the amount of the error, and set forth the basis for the obligor's belief.  15 U.S.C. § 1666(a)(1)–(3); 12 C.F.R. § 1026.13(b)(1)–(3).

Upon timely receipt, the creditor must send a written acknowledgement of the notice to the obligor within thirty days.  The creditor must investigate the dispute and, within ninety days, either issue a correction to the account or provide a written explanation of why no correction is needed.  15 U.S.C. § 1666(a)(A)–(B)(ii); 12 C.F.R. § 1026.13(c)(1)–(2).  Where an investigation pertains to goods or services not delivered in accordance with an agreement, the creditor must determine that the good or service was "actually delivered, mailed, or" sent as agreed.  15 U.S.C. § 1666(a)(B)(ii); 12 C.F.R. pt. 1026, supp. I, cmt. 13(f)(3)(ii)-1 (2026).  Upon complying with these obligations, the creditor has no further responsibility "if the obligor continues to make substantially the same allegation."  15 U.S.C. § 1666(a); 12 C.F.R. § 1026.13(h).

III.  ANALYSIS

To state a claim under the FCBA, a plaintiff must show three required elements: (1) the existence of a billing error; (2) timely notification of the billing error; and (3) failure of the bank issuing the credit card to comply with the procedural requirements of 15 U.S.C. § 1666.  *Murr v. Cap. One Bank (USA), N.A.*, 28 F. Supp. 3d 575, 593 (E.D. Va. 2014); *Beaumont v. Citibank (S.D.) N.A.*, No. 01 Civ. 3393(DLC), 2002 WL 483431, at *3 (S.D.N.Y. Mar. 28, 2002).

**A.  The Existence of a Billing Error**

The FCBA has an exclusive list of seven categories that may constitute a "billing error":

> (1) A reflection on a statement of an extension of credit which was not made to the obligor or, if made, was not in the amount reflected on such statement.
>
> (2) A reflection on a statement of an extension of credit for which the obligor requests additional clarification including documentary evidence thereof.

5

(3) A reflection on a statement of goods or services not accepted by the obligor or his designee or not delivered to the obligor or his designee in accordance with the agreement made at the time of a transaction.

(4) The creditor's failure to reflect properly on a statement a payment made by the obligor or a credit issued to the obligor.

(5) A computation error or similar error of an accounting nature of the creditor on a statement.

(6) Failure to transmit the statement required under section 1637(b) of this title to the last address of the obligor which has been disclosed to the creditor, unless that address was furnished less than twenty days before the end of the billing cycle for which the statement is required.

(7) Any other error described in regulations of the Bureau.

15 U.S.C. § 1666(b)(1)–(7). Again, the parties contend that only the third category is relevant here.

In interpreting these categories, the court finds instructive the approaches of other courts to the categories' text and context, purpose, and official interpretation. The majority of courts has viewed each category as focusing on "clerical errors" on the creditor's part: "the debtor was billed the wrong amount, billed for items he did not purchase, billed for items he refused or did not receive, or the creditor made some type of computational error or did not mail a statement." *Binder v. Bank of Am. Corp.*, No. 3:10-cv-770-B, 2010 WL 5017314, at *3 (N.D. Tex. Nov. 22, 2010); *cf. Yates v. United States*, 574 U.S. 528, 543 (2015) (describing *noscitur a sociis*). This creditor-error interpretation aligns with the statute's purpose. *See Cunningham v. Bank One*, 487 F. Supp. 2d 1189, 1191 (W.D. Wash. 2007) (noting the FCBA was designed to "help consumers make informed decisions about the use of credit and to protect consumers against unfair and inaccurate credit billing practices").

6

The Consumer Financial Protection Bureau's official interpretation of Regulation Z is also persuasive. *See Skidmore v. Swift & Co.*, 323 U.S. 134, 139–140 (1944). It offers five examples of goods or services that are "not accepted" or "not delivered" as agreed:

1. The appearance on a periodic statement of a purchase, when the consumer refused to take delivery of goods because they did not comply with the contract.
2. Delivery of property or services different from that agreed upon.
3. Delivery of the wrong quantity.
4. Late delivery.
5. Delivery to the wrong location.

12 C.F.R. pt. 1026, supp. I, cmt. 13(a)(3)(1(A–E))-1 (2026).

These examples deal with tangibly incorrect or disputed deliveries. This suggests that this category of error encompasses services that the consumer either did not purchase or did not accept rather than services that led to an outcome that did not satisfy the consumer.

Persuasive authority supports this interpretation. For instance, one court found no billing error where a club misrepresented its interest rate and failed to deliver on its marketed discounts. *Binder*, 2010 WL 5017314, at *3. The member received the membership for the agreed price without any computational error by the credit card company, so the club's misrepresentations were "more properly construed as misrepresentations regarding the quality of the membership than as a billing error under the FCBA." *Id.* By contrast, another court found that a membership was "not delivered" where a club refused to provide a member with login information or to allow him to cancel the membership. *Rigby v. FIA Card Servs., N.A.*, 490 F. App'x 230, 235–36 (11th Cir. 2012). The member had no way to receive the product itself. *Id.*

Here, Sayre argues that UkrainianCharm.com failed to deliver, as agreed, a "genuine romantic communication with real, verified individuals and a legitimate path to direct contact"

7

due to misrepresentations about its users' authenticity and a fraudulent internal credit system. (Dkt. No. 17 at 4; Compl. ¶¶ 26–36, 48–55.)  Capital One, in turn, argues that Sayre only bought "access to an online romance site, and that access was delivered to him.  He was able to engage with the services the site offered by making a profile, interacting with other users, and uploading and exchanging images and communications with those users."  (Dkt. No. 18 at 3.)

Capital One's framing is better under the FCBA.  Sayre's theory goes to the quality of his experience on UkrainianCharm.com, not to the very delivery of the experience; he does not dispute that he accepted and used the site's services while incurring the charges.  The agreed goods or services were credits to communicate with and unlock contact information for other users.  He received these.  His dissatisfaction with the ensuing results was outside the purview of the FCBA, which guards against the "unfair and inaccurate credit billing practices" of creditors, not merchants.  *See Murr*, 28 F. Supp. 3d at 592.  And, contrary to Sayre's argument, this interpretation does not make the FCBA "meaningless in any case involving online service." (Dkt. No. 19 at 7.)  In any number of circumstances, a click might fail to yield a product as agreed.  Here, the court is satisfied that Sayre got his product, however poor it turned out to be.

FCBA billing errors overwhelmingly pertain to clerical errors and mistakes on the part of a credit issuer.  15 U.S.C. § 1666(b)(1)–(7); *Binder*, 2010 WL 5017314, at *3.  Sayre purchased and received the ability to message users on UkrainianCharm.com.  For FCBA purposes, then, the site delivered its product in accordance with their agreement, and Sayre cannot make out a billing error under 15 U.S.C. § 1666(b)(3).

## B.  Timely Notification

The second element of an FCBA billing-error claim is the plaintiff's timely notification of the error to his credit issuer.  *Beaumont*, 2002 WL 483431, at *3.

Sayre does not allege enough particular facts to permit the court to infer that he notified Discover of every disputed charge within the statutory window. (Compl. ¶¶ 93–95.) However, Capital One submits a summary of Discover's investigation and UkrainianCharm.com's rebuttal. (Dkt. No. 11-1.)[1] The rebuttal lists the dates of Sayre's transactions. (Dkt. No. 11-1 at 10–12). Recognizing that these might cast doubt on his timeliness, Sayre requests leave to amend should the court find the dates dispositive. (Dkt. No. 17 at 7; Dkt. No. 19 at 9–10, 14–15.)

Because Sayre fails to plead a billing error, the court need not parse his timeliness here.

## C. Section 1666's Procedural Requirements

Finally, a creditor must investigate whether disputed goods were "actually delivered" as agreed. 15 U.S.C. § 1666(a)(B)(ii); 12 C.F.R. pt. 1026, supp. I, cmt. 13(f)(3)(ii)-1 (2026). The FCBA "establishes only the procedural framework for dispute resolution, and does not concern itself with the substantive outcome of this process." *Ladoux v. JPMorgan Chase Bank, N.A.*, No. 25-cv-01014, 2026 WL 685629, at *5 (D.N.J. Mar. 9, 2026) (quoting *Burnstein v. Saks Fifth Ave. & Co.*, 208 F.Supp.2d 765, 775 (E.D. Mich. 2002)). Accordingly, once the creditor provides its determination, it "has no further responsibility." 15 U.S.C. § 1666(a)(B)(ii). Dissatisfaction with the determination cannot satisfy the third element of an FCBA claim. *See Cornwell v. Synchrony Lending Inc.*, No. GJH-21-1155, 2022 WL 195508, at *4 (D. Md. Jan. 21,

---

[1] These were integral to Sayre's complaint, and their authenticity is undisputed, so the court may consider them for at least some limited purposes. (Compl. ¶¶ 46, 55, 63, 78, 91–92, 110, 113–15); *see Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016). At least in this case, the facial timeliness of the notice and fact of the investigation are essential to the FCBA claim, and they turn on the black-or-white facts of whether the creditor timely received the notice and provided an "actually delivered" determination, so the investigative documentation that this notice was or was not timely received or that this determination was or was not provided, notwithstanding its contents, must be integral to the claim. The complaint's references to the documents for these and other purposes bolster the conclusion that they are integral to it, and their authenticity is undisputed. The court notes that it does not rely on these movant-supplied documents for the truth of their contents, but only for facts they tend to show by their very existence. The court further notes that it does not consider these documents at all in ruling against Sayre on the first FCBA element and that, even if it were not to consider the documents at all, it would still rule against Sayre on the other two elements.

2022); *Gerken v. Cap. One Fin. Corp.*, No. 1:24-cv-01423, 2025 WL 47962, at *3 (N.D.N.Y. Jan. 8, 2025).

Sayre, broadly alleging that Discover failed to "meaningfully evaluate the documentary evidence submitted by [him]," maintains that Discover's investigation was insufficient. (Compl. ¶ 110.) But Discover investigated Sayre's use of the site and interaction with other profiles, (Dkt. No. 11-1 at 2–3); *see Goines*, 822 F.3d at 166, and, once it determined that this service had actually been delivered as agreed, it had "no further responsibility." 15 U.S.C. § 1666(a)(B)(ii). Sayre does not allege that Discover failed to comply with the FCBA's procedural requirements, and the documents show otherwise.

Because Sayre fails to plead a billing error or noncompliance with procedure, his FCBA claim cannot proceed.

## IV.  CONCLUSION

Sayre fails to state a claim against Capital One under the FCBA, so Capital One's motion to dismiss (Dkt. No. 10) will be granted, and Sayre's complaint dismissed without prejudice. *See* Fed. R. Civ. P. 12(b)(6). Sayre's motion in the alternative for leave to amend (Dkt. No. 17) and motion for leave to file a sur-reply (Dkt. No. 19) will likewise be granted. A consistent order will be issued.

Entered: July 31, 2026.

/s/ Elizabeth K. Dillon

Elizabeth K. Dillon
Chief United States District Judge